IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

United States of America,

        Plaintiff,

        vs.                         Case No. 13-10153-JTM

Jovell M. Carter,

        Defendant.

MEMORANDUM AND ORDER

Defendant Jovell Carter is charged within one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). The matter is before the court on Carter's motion to suppress the firearm, which was discovered when Deputy United States Marshals and other law enforcement officers went to arrest Carter for violation of the terms of his supervised release on separate criminal charges.

The evidence at the hearing on Carter's motion establishes that the court issued a warrant on April 16, 2013 for his arrest, based upon a violation of the terms of his supervised release. Under the terms of that release, Carter was supposed to be confined to his home at 1616 S. Gold, in Wichita, Kansas, and subject to electronic confinement. However, the United States Marshal found that Carter was not at this address. At the

residence on Gold, Carter's mother told Deputy Marshal Logan Kline that Carter was now living with his girlfriend. Carter's mother was unable to give the girlfriend's name. Through additional investigation, Kline was able to determine that Carter's girlfriend, Helen Ladonna Wood, lived at 1001 Waverly Street in Wichita. Kline showed a photograph of Wood at the house on Gold Street, and one of the residents confirmed that Wood was Carter's new girlfriend.

On May 13, approximately six law enforcement officers, including three Deputy Marshals, went to the Waverly house, where they observed a parked car which was registered to Carter's mother. The officers had identified several vehicles which were associated with Carter. All of them were registered in his mother's name rather than his own. Most of the officers went to the front door of the east-facing house. Deputy Marshal Kline entered the backyard and stood at the southwest corner of the house, while another officer stood near the northwest corner.

After the other officers knocked at the front door, Kline saw Carter enter the bedroom and begin to open the window. He also saw that Carter was carrying a handgun. When he yelled at Carter, the defendant retreated. Through the window, Kline saw Carter place the gun into some bedding in the room.

While this was going on, Wood answered the front door. When the officers stated that they were looking for Carter, Wood hesitated and looked into the back of the house. Hearing the yelling from the rear of the house, the officers in front asked Wood to have everyone in the house exit. Wood, Carter, and three other men and a women left by the

2

front door and were briefly held in the front yard.

At the scene, Carter's girlfriend confirmed that for about a month he had spending several days out of each week at the house on Waverly . She denied having a gun, and consented to the search of the house. In the bedroom, the officers found a .22 caliber revolver hidden between the mattress and box springs. Searching between a mattress and box springs is standard procedure as the Marshals clear a residence, as fugitives in the past have attempted to hide themselves inside the bedding.

In his motion, Carter argues that Kline's entry into the curtilage of the residence violated the Fourth Amendment. Carter acknowledges that the Supreme Court has recognized that, while the homes of parolees are protected by the Fourth Amendment's reasonable search requirement, this protection is subject to exceptions, and that officers may search such a home without a warrant only "when the totality of the circumstances renders the search reasonable." *United States v. Warren*, 566 F.3d 1211, 1215 (10th Cir. 2009). This exception to the general warrant requirement "is predicated on (1) the reduced (or absent) expectation of privacy that the Court would recognize for probationers and parolees and (2) the needs of law enforcement." *Id*.

Nevertheless, Carter argues that under the totality of the circumstances Kline was not authorized to enter the back yard of the residence. (Dkt. 11, at 5-6). He also seeks to distinguish the recent case of *United States v. Mabry*, 728 F.3d 1163 (10th Cir. 2013), in which the Tenth Circuit affirmed Judge Melgren's denial of suppression in another unlawful possession case, in which a firearm was discovered during the search of a parolee's home.

3

The court stressed that in Kansas parolees are subjected to search based upon reasonable suspicion, and that –

> "Reasonable suspicion is a less demanding standard than probable cause." *United States v. Tucker*, 305 F.3d 1193, 1200 (10th Cir.2002) (internal quotation marks omitted). Specifically, "reasonable suspicion is merely a particularized and objective basis for suspecting criminal activity." *Id.* "To determine whether ... investigating officers had reasonable suspicion, we consider both the quantity of information possessed by law enforcement and its reliability," viewing both factors "under the totality of the circumstances." *Id.* (footnote omitted).

According to Carter, the Marshals did not have even a reasonable suspicion to enter the backyard.

In its Response, the government does not attempt to support the search under the diminished-but-still-minimal reasonable suspicion standard applicable to parolees. Rather, the government argues that the search is independently supported by either of two grounds, neither of which is grounded on Carter's status as a parolee.

First, the government argues that the entry into the backyard was permissible given the existence of the arrest warrant. The Supreme Court recognized in *Payton v. New York*, 445 U.S. 573, 603 (1980) that, despite the Constitution's special regard for the home, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."

The Tenth Circuit has adopted *Payton* in a two-step test: an arrest warrant also conveys the limited authority to enter a dwelling, if the police "have a reasonable belief the

arrestee (1) lived in the residence, and (2) is within the residence at the time of entry." *United States v. Gay*, 240 F.3d 1222, 1226 (10th Cir. 2001).

Here, the entry into the backyard was proper under *Payton*. From their investigation, the Marshals knew that Carter was not living in the residence on Gold Street, but with his girlfriend. From Carter's family and friends, they learned that the girlfriend resided at 1001 Waverly Street. On May 13, 2013, law enforcement officers were watching the Waverly street address, and saw a car Carter was known to drive at the house.

In applying *Payton* and *Gay*, the Tenth Circuit stressed that courts "must be sensitive to common sense factors indicating a resident's presence." *Valdez v. McPheters*, 172 F.3d 1220, 1225 (10th Cir. 1999) (quoting *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). Thus, the police "are not required to actually view the suspect on the premises." *United States v. Thompson*, 402 Fed.Appx. 378, 385 (10th Cir. 2010). Instead, officers may look to a variety of factors suggesting the actual presence of the persons named in the warrant, including

> the fact that a person involved in criminal activity may be attempting to conceal his whereabouts. The suspect's presence may be suggested by the presence of an automobile, the time of day, observing the operation of lights or other electrical devices, and the circumstances of a suspect's employment. And the officers may consider an absence of evidence the suspect is elsewhere. No single factor is, of course, dispositive. Rather, the court must look at all of the circumstances present in the case to determine whether the officers entering the residence had a reasonable belief that the suspect resided there and would be found within.

*Valdez*, 172 F.3d at 1226 (citations omitted).

Applying this common-sense standard in *Thompson*, the Tenth Circuit concluded

that the entry was permissible:

> The officers had information that Thompson was staying with Letitia Harris. They confirmed Ms. Harris lived at 4619 Creek Court. They had information that Thompson was driving a green SUV. During the night of April 3–4, 2008, one of them observed, multiple times, a green Escalade at 4619 Creek Court. When officers arrived at 4619 Creek Court the next morning to execute the warrant, they saw the green Escalade. Based on these facts, it was reasonable for the officers to infer that Thompson was inside the residence.

*Id.*

These factors are also present in the case now before the court. The law enforcement officers had confirmed that Carter was probably living with his girlfriend in the residence on Waverly. They confirmed that a vehicle associated with Carter was present at that address. Most homes also have a back door or window, and it was certainly well within the marshals's experience and training to be concerned about Wood attempting to flee through the back door or a back window.

The government also argues that the search of the residence was in any event appropriate given Wood's consent to search the residence. This consent was given after Deputy Kline's entry into the backyard, and therefore cannot independently supply a basis for searching the house. That is, assuming Deputy Kline's entry into the backyard was unlawful, the subsequent search cannot be sustained if it was motivated solely in order to find the firearm Deputy Kline saw from his unlawful vantage point.

However, the evidence adduced at the trial establishes that the space between the mattress and box springs was searched as a consequence of standard house-clearing procedures used by the Marshals. Having learned by experience that persons sometimes

attempt to hide themselves in such bedding, the Marshals check bedding as a part of their standard procedure to quickly confirm that a residence is free from occupants. Because the firearm was found as the result of the standard procedures of law enforcement, the court finds that the seizure of the firearm was proper and legitimate given Wood's consent to the search of the house.

IT IS ACCORDINGLY ORDERED this 30th day of December, 2013, that the defendant's Motion to Suppress (Dkt. 11) is hereby denied.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE